### GULF, COLORADO & SANTA FE RAILWAY COMPANY v. ISABELLA HILL ET AL.

#### Decided April 26, 1902.

**1.—Railway Company—Custom in Uncoupling Cars—Charge.**

Where, in an action for the death of a switchman killed while uncoupling cars, the evidence showed that the speed of the cars was increased on a kick signal being given by another, and the deceased was struck, and the evidence was conflicting as to whether it was arranged by him with others that the signals should be so given at such a time, and as to whether it was the custom there to so give it, a charge to the jury to return a verdict for the defendant if the deceased knew that the speed was to be so increased, and if there was such custom, was error, since either fact constituted a defense.

**2.—Same—Custom in Other Yards.**

Under the facts as shown in evidence the court should not have refused a requested charge to the effect that if a kick signal, whereby the speed of the cars was increased, was given in accordance with the custom of the yard where the accident occurred, and that the custom was known to the switch crew, it was immaterial how the work was done in other yards.

**3.—Same—Charge Upon Issue Not Raised.**

A charge submitting the issue of whether the act of the deceased in exposing his body between cars, if negligence, contributed to the accident, was erroneous, since the evidence presented no issue whether such act did contribute to the accident, and it was inevitable that it did.

**4.—Contributory Negligence—Burden of Proof—Charge.**

Where, in an action for the death of a switchman, plaintiffs had, in the development of their case, presented the issue of contributory negligence, and had given evidence of facts which, standing alone, would have authorized submission of that issue, the court should have given no charge as to the burden of proof on that issue, or given one permitting the jury to look to the whole evidence in determining whether that defense was established, but not one that the burden was on the defendant to show by a preponderance of evidence that the deceased was guilty of contributory negligence.

Error from Harris. Tried below before Hon. Wm. H. Wilson.

*J. W. Terry* and *Chas. K. Lee,* for plaintiff in error.

*Lovejoy, Sampson & Malevinsky,* for defendants in error.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Isabella Hill, plaintiff in the court below, for herself and as next friend of her two minor children, to recover of the defendant damages for the alleged negligent killing of her husband, J. H. Hill. The parents of deceased were also parties plaintiff, but were dismissed. A jury trial resulted in a verdict and judgment for plaintiffs, and defendant has brought the cause here by writ of error.

Plaintiffs allege as a basis for recovery that the deceased was a switchman in the employ of defendant, and was at the date of the accident which caused his death engaged with other members of a switching crew in doing some switching in the yards at Galveston. That it was the purpose of those thus engaged to kick the end car of a string of cars they were hauling into a side track without following it in with the rest of the train. That in order to do this the train as it backed in the direction of the switch was to be slowed down to a slow rate of speed, whereupon it became the duty of deceased to uncouple the end car. That in doing so it was proper for no one to give the kick signal except deceased. That he undertook to uncouple the cars, and while doing so his fellow switchman, without warning to him, negligently gave the kick signal, in response to which the speed of the train was suddenly and violently increased, whereby he was knocked down, run over by the cars, and killed. That the signal which caused his death was given by one Fewell, and that his coemployes were negligent in taking the signal from Fewell, but should have waited until the deceased had signaled that the cut had been safely made.

In addition to the general denial, the defendant pleaded specially that deceased's injuries and death resulted from one of the risks ordinarily incident to his employment; pleaded his contract of employment, in which he acknowledged himself familiar with defendant's rules; agreed to look to his coemployes for all necessary information looking to his safety; agreed that in every case of doubt he would take the safest course; that he would avoid taking risks, would familiarize himself with the rules, conform his acts to their requirements, and report all infringements thereof. Such of the rules as are supposed to be applicable are pleaded, but it is not necessary to set them out in this connection.

It was further averred in defense that the kicking of the car had been prearranged and the programme fully understood by deceased; that he knew it would be his duty to uncouple the car; that the same would be kicked and that it was his duty to give the kick signal before uncoupling or to see that it was given; that the signal that was given was usual and customary and one that deceased knew would be given in doing the work; that such was the usual and customary way of doing the work in the Galveston yards, wherefore it is alleged the danger

therefrom was one of the ordinary risks of the employment; that the cars were equipped with automatic couplers which rendered it unnecessary for him to go in between the cars or to expose any part of his body between them, and that if he did so he assumed the risk.

It was also charged that he was guilty of contributory negligence in exposing himself between the cars without either having given the signal or knowing it had been given. That though expressly warned by the rules to look out for signals, take no risks, etc., he failed to take these precautions and therefore was the cause of his own injury.

This statement of the substance of the pleadings is believed to be sufficiently full for the purposes of this opinion.

J. H. Hill, the husband of the plaintiff in this case, was on March 9, 1900, an employe of defendant in the capacity of switchman, and between 5 and 6 o'clock on the afternoon of the day named, while engaged in switching in the yards of defendant at Galveston, he was run over and killed by defendant's train. At the time of the accident he was engaged in switching and was, as expressed by the witnesses, "working in the field." The crew had been out in the west yards near the bay bridge, in the city of Galveston, and had come back from the west with a string of twenty-five or thirty cars, mostly box cars, the engine being at the rear end of the train backing up. The front car of the train as it backed was a flat car loaded with lumber and the next two cars were cinder cars. Deceased rode from the west yards to the middle yards, near Forty-second street, on the front end of the flat car as they backed up. The other members of the crew were John McCarty, foreman; C. A. Hooks, another switchman; Chris Miller, engineer, and Thomas Gillam, the fireman. In coming from the west yards the train of cars was propelled at a speed of about ten miles an hour, but when it neared a point designated as "Fogarty switch" it was slowed down to a speed of two or three miles an hour for the purpose of allowing Hill to alight, throw the switch for "rip track No. 2" (on which it was intended to place the end car), and to uncouple the car so it could be kicked in.

Fewell, the night yardmaster, was near the switch, and receiving from McCarty a signal as to what was intended, threw the switch and Hill proceeded at once to uncouple the car. McCarty saw him approach the point in the train where the uncoupling was to be made and reach out as if to take hold of the uncoupling lever, but at that point he ceased to be in view of McCarty. No witness testifies that the acts of Hill were seen after that, though the track at that point was straight. Fewell, who was then standing at the switch and had thrown it for the side track, and who was a considerable distance from Hill (some of the witnesses placing him as much as seventy-five yards away), gave the kick signal. This was received by McCarty, who transmitted it to the engineer, who obeyed it without knowing the exact position of Hill. In response to the kick signal the speed of the train was increased from two or three to seven or eight miles an hour. It was at once discovered that Hill was under the train and Fewell gave the emergency stop signal.

The train was promptly stopped. The car was in fact uncoupled, and as a result of the response to the kick signal and the increased speed of the train, rolled into the side track as intended. Hill was found between the rails with his arm and leg crushed, two cars having passed over him, and he died a few hours later. He was a sober, experienced, and efficient switchman, and had been at work in defendant's yards at Galveston for several years. No one saw Hill fall, and there is no direct testimony as to how he fell, his position just before the fall, or what caused it. No one testifies as to whether he went in between the cars wholly or partially in his effort to uncouple. No one testifies whether the lever worked hard or easy at that moment.

An inspection afterwards showed that the coupling apparatus was in good condition and worked easy. The coupling apparatus was automatic,—the Santa Fe car being equipped with a Trojan coupler and the Texas & New Orleans car with a Janney coupler. Each had a lever extending to near the side of the car which, when in perfect order, could be raised with the hand without going between the cars; but the evidence was conflicting as to whether it could be raised without leaning toward the cars and putting the arm and part of the body in such a position as to be struck if the speed of the train was suddenly increased. There was also testimony to the effect that frequently coupling apparatus in apparent perfect condition would work hard and require considerable force to lift the lever, and that in such case more of the body would be put between the cars in the effort to lift it.

The evidence is practically undisputed that the kick signal was given and obeyed about the time Hill undertook the uncoupling, and that no one knew his position or just what he was doing at that time. It is also true that the signal was given without warning to him and without knowledge that the uncoupling had been safely accomplished.

It was shown that if the slack of the train was extended the cars could not have been uncoupled, as the tension would hold the pin tightly in place and that a back up signal was necessary in order to loosen the tension, but the evidence is conflicting as to whether the slowing of the train had not effected this.

There is a difference between a back up signal and a kick signal. A back up signal means that the engineer shall back the train. A kick signal means that the speed shall be sufficiently increased to throw the cut off car into the side track by the force of the increased momentum without following the car into the switch with the rest of the train. The signal given by Fewell and transmitted to the engineer was a kick signal. Hill knew that the car was to be kicked when cut off, and that the kick signal was necessary and should be given by some one. The main point of conflict in the evidence is whether his coemployes should not have waited for him to give it, or notified him that it would be given by another than himself.

Another point of conflict is whether, if another gave it, he should have apprised himself that Hill was safe before he gave it.

Defendant adduced evidence to show that it was the custom in the Galveston yards of defendant to give the kick signal without reference to the position of the man doing the uncoupling, and that Hill knew of this custom and should have expected the signal and increased speed of the train, and should have been prepared for it. There was evidence also that this was the general method and custom in switching with automatic couplers. On the other hand, there was evidence that the general method was to await a signal from the man who was doing the uncoupling, as he was the man in danger and the only one who could know when the work as safely done.

The circumstances also showed that there was no obstruction between Hill and Fewell and that if he had been looking he could have seen the signal, but there was also evidence to the effect that his attention should have been fixed on the task before him, and that as the signal should have been given by him he need not have looked out for a signal which he had no reason to expect.

It was shown that the acts of Fewell made no change in the programme as to the kicking of the car, as the kick signal must have been given at some time during the progress of the work in order to accomplish the end desired.

Defendant's assignments of error from 1 to 8 inclusive assail the judgment in various forms on the ground that the undisputed facts authorize a judgment for defendant, and that the court should have either so charged or should have granted a new trial on that ground. In view of the disposition made of this appeal we deem it proper to refrain from a general discussion of the facts and evidence. It is necessary, however, to dispose of the contention that the court should have directed a verdict for defendant. We are of opinion the evidence authorized the submission of the question of liability to the jury, and the court did not err in refusing to direct a verdict.

By the eleventh assignment of error the following portion of the court's charge is assailed: "If from the evidence you believe that a programme had been arranged between Hill and the other employes of defendant in the switch crew, for the switching of the car, and that under said programme the said Hill knew that at or about the time he went to uncouple the car the train would be put in backward motion and started backwards for the purpose of giving the end car a kick that it might roll into the side track, and that such was the usual and customary method at the Galveston yards of doing the work, and that said Hill knew of such fact, if any, and knew when he went to do the work that said car would be kicked in said manner without signal from or notice to him, and that notwithstanding such knowledge on the part of Hill he put himself in a position to be struck by the backward movement of the train, if any, then (if you so find the facts) you will return your verdict for defendant as in such state of facts he would have assumed the risk of such backward movement."

The first objection urged against the charge is that it submitted the

question of programme as an issue, when the undisputed evidence is that one had been arranged and that Hill was advised of it.

It is true that it was shown without dispute that a programme had been arranged which involved the kicking of the car and therefore the giving of a kick signal, and that of this Hill was fully advised. This the court might safely have assumed, but we do not regard his failure to do so as material. It is certainly true that he did not err in refusing to assume that the programme involved the giving of the kick signal at the particular time it was given or by some one other than Hill, and without warning to him. Upon these issues the evidence was conflicting. If the court could assume that the programme of which Hill was advised included the giving of the kick signal without warning to him, nothing remained but to charge for defendant, and as we have seen this should not have been done.

The other objections, however, are more serious. It will be observed the court charged the jury, in effect, that in order for them to find for defendant on the theory of assumed risk, they must believe from the evidence (1) that a programme had been arranged of which Hill knew; (2) that under the programme Hill knew that about the time he went to uncouple the car the train would be put in backward motion without warning to him; and (3) that such was the usual and customary way of doing the work in the Galveston yards, and he knew of such fact.

If the programme involved the giving of the signal as it was given and Hill knew it, that of itself would have been a distinct defense, whether the custom was established or not.

If the custom was established as contended for by defendant, that of itself would be a distinct defense, for all of the testimony to the effect that the custom contended for by defendant prevailed in the Galveston yards also visits knowledge of it on Hill, so that if the jury believed the custom had been established they must also have found that Hill was familiar with it.

If Hill acquired from any other source knowledge that the signal had been given or was about to be given without reference to him and nevertheless put himself in a place of danger, the fact would be an effective defense without reference either to custom or programme, and this issue was presented by the facts showing that Hill knew that Fewell had thrown the switch and his view of Fewell was unobstructed when he undertook the work and the signal was given. Yet the court, in the portion of the charge quoted, conjunctively states these matters of defense so that the jury is required to find custom, knowledge of custom, and knowledge of the fact in order to sustain the defense of assumed risk.

For the reasons given we regard the charge as affirmative error. The charge given at the request of plaintiff, to the general effect that knowledge on the part of Hill would be a defense, did not serve to cure the error. It left the charge confused, contradictory, and misleading. The

prominence given to the issue of the existence of the custom during the trial may, in the light of this charge, have well induced the jury to believe that the defendant in order to be entitled to a verdict must in any event have established the existence of the custom contended for. The other criticisms of this portion of the charge are not tenable.

Defendant requested the court to give a special charge to the effect that if they should find from the evidence that a certain custom prevailed in the Galveston yards as to signals and who should give them, and a method of work known and usual with the switching crew in question, then it would be immaterial in this case how the work may have been done in other yards. This the court refused to give and his refusal is assigned as error.

The court had been previously asked to charge that evidence of how work was done in other yards should be disregarded by the jury. This was properly refused, because there was evidence to the effect that like customs and methods prevailed in all yards and was proper to be considered in determining the issue of custom prevailing in the Galveston yard.

But the defendant had the right to have the effect of that testimony limited in the event the jury should determine that a different custom in fact prevailed in defendant's yards at Galveston. It may be the custom of other yards, as contended by plaintiff. It may be it was a wiser and a safer and a more humane custom and one which ought to have prevailed universally, but it is nevertheless true that if deceased and his fellow workman had adopted a different method from which he should have expected the kick signal to be given without regard to him, the custom so adopted would unquestionably bind him without reference to the custom prevailing in other yards.

The charge presented by the thirteenth assignment should have been given.

Defendant also complains because the court charged that the burden of proof was on the defendant to show by a preponderance of the evidence that the deceased, Hill, was chargeable with contributory negligence.

We think the complaint well founded. The case is one largely of circumstantial evidence. The plaintiffs in the development of their case presented the issues of contributory negligence and assumed risk. In addition to this some of plaintiffs' witnesses testified to facts which if standing alone would have authorized the submission to the jury of the issue of contributory negligence. This being true, it seems to us a case in which the court should have given no charge on the burden of proof as to that issue. Railway v. Geiger, 79 Texas, 21. Or else should have given a charge so modified as to permit the jury to look to the whole evidence in determining whether the defense had been established. Railway v. Reed, 88 Texas, 439.

Such a charge has been held erroneous and misleading as tending to induce the jury to look alone to defendant's evidence for proof upon

the issue and to ignore the evidence furnished by plaintiffs' case and plaintiffs' witnesses. Railway v. Martin, 63 S. W. Rep., 1089; Railway v. Albright, 26 S. W. Rep., 250.

We do not regard this conclusion as in conflict with the case of Railway v. Sheider, 88 Texas, 152.

Defendant further complains because the court charged the jury that if deceased exposed his body between the cars, and if such act on his part was negligent, and that but for such negligence on his part he would not have been killed, then he would be guilty of contributory negligence, and you will find for defendant. The objection urged against this charge is that it submits as an issue whether the act of exposing the body between the cars, if negligence, contributed to the accident, when as a matter of fact it inevitably did so and the evidence presented no issue about it. The objection is well sustained by authority. Railway v. Rowland, 90 Texas, 365; Railway v. McCoy, 90 Texas, 264; Culpepper v. Railway, 90 Texas, 627.

Plaintiffs contend that, if error, the charge was justified by special charges requested by defendant. We do not think the requested charges referred to susceptible of the construction suggested by plaintiffs. The assignment is sustained.

The other assignments do not require extended notice. They either present no error or else complain of matters which are not likely to be repeated on another trial.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

The judgment in this case was reversed and the cause remanded for reasons given in the main opinion.

On motion for rehearing the questions arising upon the causes assigned for reversal were certified to the Supreme Court. The answers of that court hold us to have been in error as to the first three questions certified. Upon the fourth our decision is held to have been correct. 95 Texas, 629.

Appellees now urge (1) that the error sustained by the Supreme Court against the judgment of the trial court in the answer to the fourth question was not raised in the brief of appellant; and (2) that if it was it was harmless error, in view of the facts of the case and of other cases in which the Supreme Court has refused writ of error.

Upon the first position we have examined the briefs and are clear that the question is presented. On the question the answer to which requires in our opinion a reversal of the judgment, we can not concur in the contention of counsel. We have held the seventeenth assignment should be sustained as reversible error. The Supreme Court in answer to the fourth question certified, have, with all the facts before them, together

with an assurance in effect that we would not reverse the cause upon the facts, held that we were right in our position. The cases in view of which we are requested to construe the answer of the Supreme Court were doubtless considered by that tribunal both in determining the answer to the question and their consideration of the motion for rehearing, which was overruled. Counsel has perhaps misapprehended the expression of this court to the effect that on the record the case was one of merit and should not be reversed except for errors of law likely to affect the jury in making up their verdict. We deemed this expression proper in view of the fact that some of the questions might involve the question of harmless or harmful error, but did not intend to say what this court would have done had the facts been presented to us as a court of first instance. In the matter of the submission to the jury of the question whether the act of the deceased in going between the cars or placing himself partly between the cars if contributory negligence was the proximate cause or proximately contributed to the accident, we held that the trial court erred. This seems to be well settled by the cases cited in the main opinion and we adhere to the ruling, but we do not now determine whether the error was such as to require a reversal if no other error had been committed. It is not necessary to decide the question, as the error need not be repeated on another trial.

The main opinion as modified by the answers of the Supreme Court to certified questions, together with this opinion on motion for rehearing, are upon a like state of facts to be looked to by the trial court upon another trial, for the law of the case upon the questions involved in this appeal. The motion is overruled.

<em>Overruled.</em>